241 P.3d 518

Richard M. ROMLEY, in his official capacity as Maricopa County Attorney, Petitioner,

v.

The Honorable Donald DAUGHTON, Retired Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Maricopa County Board of Supervisors; and its Members; Fulton Brock; Don Stapley; Andrew Kunasek; Max Wilson; and Mary Rose Wilcox, in their official capacities as Maricopa County Supervisors; Maricopa County, Real Parties in Interest.

No. 1 CA–SA 09–0212.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 28, 2010.

Jennings, Strouss & Salmon, P.L.C. By J. Scott Rhodes, Phoenix, Attorneys for Petitioner.

Polsinelli Shughart, P.C. By Thomas K. Irvine, Phoenix, Attorneys for Real Parties in Interest.

GEMMILL, Judge.

¶ 1 In this special action, the Maricopa County Attorney challenges the trial court's determination that the Maricopa County Board of Supervisors ("Board") was lawfully entitled to (1) retain independent legal counsel to advise it about whether the County Attorney had conflicts of interest in representing the Board and (2) create and fund litigation departments, separate from the County Attorney's office, to handle the county's civil legal matters. Resolving these issues requires harmonizing applicable statutes and balancing the often-competing powers granted by law to the County Attorney and the Board. After considering the applicable statutes, Arizona Supreme Court precedents, and the arguments of the parties, we accept special action jurisdiction, grant partial relief,

and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In March 2009, the County Attorney filed a two-count complaint in superior court seeking declaratory and injunctive relief against the Board and the Board's five members.[1] Count One of the complaint challenged certain decisions by the Board to reject the County Attorney's legal services in favor of outside legal counsel. Count Two is not at issue in this special action. The following events preceded the filing of the County Attorney's complaint.

¶ 3 On December 5, 2008, the Board held a special meeting at which it appointed a private law firm, Shughart, Thomson & Kilroy, P550938.C., to be special counsel to the Board.[2] The firm was asked to evaluate whether the County Attorney had conflicts of interest in representing the Board, advise the Board about any such conflicts, and file "any actions necessary as a result of any conflict with the County Attorney."[3]

¶ 4 Based on advice from the private firm, on December 23, 2008, the Board voted to approve a motion to "take back its authority to direct and control the prosecution, defense and compromise of all civil legal actions to which the County is a party or has an interest." The Board effectively divested the County Attorney of his power to handle the County's civil legal matters and appointed Shughart, Thomson & Kilroy to file "any actions necessary as a result of any conflict with the County Attorney" and to provide the Board advice and support necessary to implement the motion.

¶ 5 In January 2009, the acting county manager informed the County Attorney that, "pending additional developments, Maricopa County will no longer be sending new civil litigation matters to the [County Attorney's

1. Andrew Thomas was the County Attorney when this suit was initiated but resigned and was replaced in April 2010 by Richard Romley, who is now the petitioner in this special action. *See* Ariz.Rev.Stat. ("A.R.S.") § 11–407 (2001).

2. This firm is now Polsinelli Shughart, P.C.

3. The record before us indicates that certain members of the Board believed County Attorney Thomas had several conflicts of interest in representing the Board.

Civil Division] for assignment to its attorneys." In March 2009, the Board approved the creation and funding of a General Litigation Department outside the purview of the County Attorney. Since its creation, this department has represented the County in all new civil legal matters in which the County has an interest except for property tax cases, which the record indicates are still handled by the Civil Division of the County Attorney's Office. The Board also created a Special Litigation Department to handle cases with which the General Litigation Department has a conflict of interest.

¶ 6 Count One of the County Attorney's complaint in this action asked the superior court to, *inter alia,* declare that:

A. The Board has no authority or power to appoint ... the Shughart Firm ... or any other legal counsel to provide advice to the Board regarding whether the County Attorney has a conflict of interest with the Board, for the filing of any actions necessary as a result of whether any conflict exists with the County Attorney, to act as the Board's legal advisor, or to defend or oppose claims brought against the County.

B. The Board is enjoined from appointing, employing and/or retaining independent legal counsel for the purpose of obtaining legal advice or for the purpose of defending the County without the consent of the County Attorney.

C. The Board is enjoined from accessing, reviewing or reassigning pending civil claims and litigation involving the Maricopa County Attorney.

D. In the event the County Attorney is unable to represent the Board, ... the Board has no authority or power to appoint outside counsel to represent it.

E. No officer or board of the County, with the exception of the County Attorney, has the power or authority to declare a conflict of interest of the County Attorney. When there is a conflict of interest, the County Attorney has the authority to appoint counsel.

¶ 7 The Board filed an answer and a counterclaim seeking declaratory relief, alleging the County Attorney had several conflicts of interest that prohibited him from acting as the Board's attorney. The counterclaim asked the court to declare that "the County Attorney's conflicts of interest make him unavailable and incapable of acting as attorney for Maricopa County" and that "Maricopa County can appoint legal counsel to provide it legal advice because the County Attorney is unavailable."

¶ 8 The County Attorney and the Board each moved for summary judgment. In August 2009, the trial court granted the Board's motion and denied the County Attorney's motion. The court found that the County Attorney "is subject to and required to follow the Arizona Rules of Professional Conduct" and that he, "in his relationship with ... [the Board,] has not complied with those professional obligations." The court further concluded:

> The Board of Supervisors was therefore legally entitled to take the actions it took on December 5, 2008 and December 23, 2008. Although it is the opinion of this Court that the actions of the Maricopa County Board of Supervisors on December 23, 2008 were appropriate at that time, the Board of Supervisors must bear in mind that when the County Attorney follows the Ethical Rules in his relationship as attorney for Maricopa County and the Board of Supervisors, his office will then be the appropriate attorney of record for Maricopa County in those cases in which no conflict of interest exists.

The County Attorney filed this petition for special action to challenge the court's ruling.

## JURISDICTION

¶ 9 Special action jurisdiction is appropriate here because the case involves pure questions of law that are issues of first impression and statewide significance. *See State ex rel. Pennartz v. Olcavage,* 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001). In addition, the essential facts of this case are undisputed and the parties have supplied the court with an adequate record to make a determination. *See Piner v. Superior Court,* 192 Ariz. 182, 185, ¶ 10, 962 P.2d 909, 912 (1998) (accepting special action jurisdiction when facts uncontested and legal issue could

"properly be decided on the present record"). Also, resolving these issues now promotes judicial economy. *See Marshall v. Superior Court*, 131 Ariz. 379, 381, 641 P.2d 867, 869 (1982); *Pompa v. Superior Court*, 187 Ariz. 531, 533, 931 P.2d 431, 433 (App.1997); *Harris Trust Bank of Ariz. v. Superior Court*, 188 Ariz. 159, 162, 933 P.2d 1227, 1230 (App. 1996).[4]

## ANALYSIS

¶ 10 The issues presented are whether the Board, believing the County Attorney has conflicts of interest in representing the Board, may on its own initiative lawfully: (1) employ outside counsel to advise it about such conflicts, and (2) divest the County Attorney of his power to represent the County by creating in-house legal departments to handle the County's civil legal matters. Our analysis focuses on Arizona statutes and pertinent Arizona Supreme Court opinions.

### Outside Advice Counsel

■ ¶ 11 In accordance with A.R.S. § 11–532(A), the county attorney of each county shall "[a]ct as the legal advisor to the board of supervisors." A.R.S. § 11–532(A)(9) (2001). He shall also, "[w]hen required, give a written opinion to county officers on matters relating to the duties of their offices." A.R.S. § 11–532(A)(7).

¶ 12 The Arizona Supreme Court has held that the board of supervisors *generally does not* have the authority to employ private counsel to advise it:

[T]he first question to which we address ourselves is whether the Board has the power to hire "in-house" counsel independent of the County Attorney for the purpose of advising it and the various county officers relative to legal matters. *Our conclusion is that it may not. . . .*

From the foregoing and from an examination of Arizona's statutes, we think it is clear that the Board has no authority to employ private counsel to advise the Board and other county officers or employees. The Constitution of Arizona created the

Office of County Attorney and the statute prescribes the duties attached thereto. . . . *Of course if a county attorney refuses to act or is incapable of acting or is unavailable for some other reason, a county board may hire outside counsel to assist it.*

*Bd. of Supervisors of Maricopa County v. Woodall*, 120 Ariz. 379, 381–82, 586 P.2d 628, 630–31 (1978) (emphasis added).

■ ¶ 13 The Board in this case appointed Shughart, Thomson & Kilroy to advise it whether the County Attorney had conflicts of interest in representing the Board. As explained in *Woodall*, the Board may retain outside counsel to advise it only when the County Attorney "refuses to act or is incapable of acting or is unavailable for some other reason." *Id.* A conflict of interest is sufficient to render a public attorney "unavailable." *Salt Lake County Comm'n v. Salt Lake County Attorney*, 985 P.2d 899, 907 (Utah 1999). We conclude that when the county attorney has conflicts of interest that render him "unavailable" to represent the county in certain matters, the board may retain outside counsel to advise the Board in those matters.

■ ¶ 14 The Board and the County Attorney each claim the sole discretion to determine whether the County Attorney is unavailable due to a conflict of interest. We conclude, however, that neither the Board nor the County Attorney may resolve this issue alone. The Utah Supreme Court, in addressing a similar situation, has set out a reasonable course of action for the parties to follow when they disagree about whether the county attorney has a conflict of interest that precludes him from representing the county in a matter. *Salt Lake*, 985 P.2d at 908–09.

¶ 15 According to *Salt Lake*, "the parties should [first] attempt to settle the matter among themselves." *Id.* at 908. Second, if they are unable to resolve the matter themselves, they should request assistance from the Attorney General's office. *Id.* In both Arizona and Utah, the Attorney General has the statutory authority to offer guidance to

---

4. At the request of the parties, the analysis and preparation of this opinion was held in abeyance for a few months while the parties explored a possible negotiated resolution.

the parties on such issues.[5] *See id.* As a last resort, the parties should "resort to the courts by seeking a declaratory judgment." *Id.* at 909.

¶ 16 The court in *Salt Lake* also noted that the board of supervisors, in seeking a declaratory judgment, will need to retain outside counsel to represent it and to appear in court on its behalf. *Id.* at 909 n. 10. We agree that under similar circumstances, a board of supervisors may need to retain outside counsel to advise it about whether the county attorney has conflicts of interest and to represent it in the resolution procedures set out in *Salt Lake.* This is because the question of whether conflicts of interest exist and the issue of how to proceed to resolve the matter, including whether to bring such a declaratory action, require legal advice, which of course the county attorney would not be in a position to offer.

¶ 17 We endorse the approach set forth in *Salt Lake* for resolving a disagreement about whether the County Attorney has a conflict of interest. And we emphasize that neither the Board nor the County Attorney has sole discretion to determine the matter. In any future disagreement, we encourage the filing of a declaratory judgment action only as a final resort.

¶ 18 Under the principles set forth above, the Board may lawfully retain outside counsel to represent and advise it when the County Attorney has a conflict of interest that renders him "unavailable." The Board also may retain outside counsel for advice and representation regarding whether the County Attorney has conflicts of interest, alternatives available to resolve issues short of litigation (*see supra* ¶ 15), and to file an action for declaratory judgment to determine if the County Attorney is therefore unavailable to carry out his ordinary representation. Accordingly, we agree with the trial court that the Board acted lawfully on December 5,

2008, in retaining outside counsel for this category of advice and representation.

## The Board's New Litigation Departments

¶ 19 The county attorney of each county also has a duty (and the authority) to represent the county in civil litigation. Under A.R.S. § 11–532(A), the county attorney shall "defend actions brought against the county" and "oppose claims against the county which the county attorney deems unjust or illegal." A.R.S. § 11–532(A)(4), (9).

¶ 20 The County Attorney's authority in representing a county in civil litigation is not, however, unlimited. Under A.R.S. § 11–251(14), the Board has the authority to "[d]irect and control the prosecution and defense of all actions to which the county is a party, and compromise them." In *County of Santa Cruz v. Barnes,* 9 Ariz. 42, 49, 76 P. 621, 623 (1904), the Territorial Supreme Court held that, because of this authority, the board has the power to hire outside counsel for litigation matters when the county attorney (called "district attorney" then) has consented to the hiring:

> It is and should be the law that the supervisors of the county, on motion of, or with the consent of the district attorney, have the power, when they find it necessary or advisable, to employ counsel in addition to the district attorney to protect the interests of the county, not only in the conduct of, but in the preparation for, any litigation to which the county may be a party.

¶ 21 In *Pima County v. Grossetta,* 54 Ariz. 530, 540, 97 P.2d 538, 542 (1939), our supreme court explained that the board of supervisors also has the power to retain outside litigation counsel even without the consent of the county attorney. The supreme court stated that the board of supervisors is the "final authority" in controlling the cases in which the county has an interest, and it reasoned that:

---

5. Under A.R.S. § 41–193, the Attorney General must: "[e]xercise supervisory powers over county attorneys of the several counties in matters pertaining to that office"; "when deemed necessary, assist the county attorney of any county in the discharge of the county attorney's duties"; and, "[u]pon demand by . . . a county attorney,

render a written opinion upon any question of law relating to [the county attorney's] office." A.R.S. § 41–193(A)(4), (5), (7) (2004). These statutes are substantially similar to the Utah statutes upon which the court relied in *Salt Lake,* 985 P.2d at 908–09.

It may frequently occur that the county attorney has one idea as to the advisability of bringing an action for the county, or as to how it should be handled, while the supervisors have a different one, so that there would be a *lack of harmony* between them. Under such circumstances it would seem that the public interest would require that the men who had the final authority in all matters in regard to the action should be allowed to choose the counsel who actually handled its legal phases. Since there is no specific prohibition against it in the statutes, we think [A.R.S. § 11–251(14)] gives implied authority to the board of supervisors in its discretion to employ counsel in the handling of all matters to which the county is a party.

*Id.* (emphasis added).

¶ 22 The supreme court in *Woodall,* 120 Ariz. at 382, 586 P.2d at 631, addressed whether the Board could "engage counsel independent of the County Attorney for the purpose of prosecuting and defending legal actions brought on behalf of or against the county." The court quoted at length from the opinions in *Barnes* and *Grossetta* before reversing the trial court's order "insofar as it forbids the Board of Supervisors from hiring all outside legal counsel for the purpose of litigation." *Id.* at 383, 586 P.2d at 632.

■ ¶ 23 The *Woodall–Grossetta–Barnes* trilogy of cases does not, in our view, authorize the Board to divest the County Attorney on a wholesale basis of his duty and authority to represent the county in civil litigation, as the Board has done here. Such an approach was not endorsed by *Barnes,* where the court explicitly did not consider whether the board of supervisors could "disregard or supersede the district attorney as the law officer of the county, and employ other counsel to transact the county business in his stead." 9 Ariz. at 49, 76 P. at 623. Instead, the court in that case upheld the hiring of independent legal counsel for a limited purpose when the board finds it "necessary or advisable." *Id.* Nor was a substantial displacement of the county attorney's duty to represent the county in litigation contemplated by our supreme court in *Grossetta,* where the board of supervisors hired outside counsel for a limited period of time to perform limited, specified tasks. 54 Ariz. at 533–34, 97 P.2d at 539–40. And the court in *Woodall* merely rejected the notion that the Board is prohibited in all circumstances from hiring outside litigation counsel.

■ ¶ 24 The Board may retain outside counsel when the County Attorney has a conflict of interest, and therefore is unavailable to represent the County, *see Salt Lake,* 985 P.2d at 907, or when there is a "lack of harmony" between the Board and the County Attorney regarding the handling of a particular legal matter. *See Grossetta,* 54 Ariz. at 540, 97 P.2d at 542. "Lack of harmony" in this context refers to a disagreement about legal strategy in a particular case, not some general disharmony in the personal relationship between the County Attorney on one hand and members of the Board on the other. Furthermore, according to our supreme court, it is for the Board alone to decide when such a lack of harmony exists and its decision in this regard is not subject to judicial review. *See Woodall,* 120 Ariz. at 382, 586 P.2d at 631 (suggesting that the board should not unnecessarily put county to expense of extra counsel but "in any event, it is a matter in which their judgment and discretion is not open to review by the courts") (quoting *Hornblower v. Duden,* 35 Cal. 664 (1868) as quoted in *Barnes,* 9 Ariz. at 48, 76 P. at 623). But it is only "[u]nder such circumstances" that the board can lawfully hire outside counsel. *Grossetta,* 54 Ariz. at 540, 97 P.2d at 542.

■ ¶ 25 Applying these principles, we conclude that a county board of supervisors would exceed its authority in effectively divesting the county attorney of his power to represent the county and its agencies without the requisite determination on a case-by-case basis of unavailability of the county attorney or a lack of harmony between the board and the county attorney. We emphasize that, based on the *Woodall–Grossetta–Barnes* trilogy of cases and the applicable statutes, any determination of unavailability or lack of harmony must be made on a case-by-case basis. *See supra* ¶¶ 19–24.

¶ 26 The trial court in this case found that the County Attorney has not complied with

the Arizona Rules of Professional Conduct in his relationship with the Board. We presume the court found, as the Board alleged, that the County Attorney had conflicts of interest that precluded him from representing the Board and the County. Based on our determination that a case-by-case determination must be made, however, a remand is necessary to allow the trial court to conduct further proceedings, including any necessary fact-finding, in order to specify the matters in which the County Attorney has conflicts of interest. Additionally, the resignation of County Attorney Thomas, the appointment of Interim County Attorney Romley, and the anticipated November 2010 election of a new county attorney, may affect the determinations of the trial court regarding conflicts of interest and unavailability. Also, the Board's own determinations regarding lack of harmony in particular civil cases may be affected by these changes in the officeholders.

¶ 27 Accordingly, we remand for a determination of those specific matters on which the County Attorney has a conflict of interest.[6] In such cases, the Board may lawfully assign representation of the County to legal counsel of its own choosing. Similarly, when the Board has determined that a lack of harmony exists between the Board and the County Attorney in the handling of a particular litigation matter, the Board is entitled to retain counsel separate from the County Attorney for the representation.

### CONCLUSION

¶ 28 Regarding the Board's authority to retain counsel separate from the County Attorney to provide day-to-day advice to the Board, the County, and County employees and entities, our supreme court in *Woodall* made it clear that the Board generally does not have such authority. 120 Ariz. at 381–82, 586 P.2d at 630–31. We conclude, however, that the Board may, on its own initiative, employ outside counsel to represent and advise the Board regarding whether the County Attorney has one or more conflicts of interest with the Board that render him un-

available and also regarding the appropriate actions that may be taken by the Board under such circumstances, including the filing of actions for declaratory judgment to determine if the County Attorney is unavailable because of conflicts of interest.

¶ 29 Regarding the Board's authority to retain other counsel to represent the County and its officers and entities in civil litigation, we hold that the Board may divest the County Attorney of his duty and authority to represent the County on a case-by-case basis, when the County Attorney is unavailable due to a conflict of interest or when there exists the type of "lack of harmony" in the handling of a particular case contemplated by our supreme court in *Grossetta,* 54 Ariz. at 540, 97 P.2d at 542.

¶ 30 We exercise our special action jurisdiction and grant relief by remanding for further proceedings consistent with this opinion.

CONCURRING: JON W. THOMPSON and DIANE M. JOHNSEN, Judges.

---

6. Because of the need to remand for further proceedings, we do address the trial court's finding that the County Attorney had not complied with his professional obligations with respect to the Board.