586 P.2d 628

The BOARD OF SUPERVISORS OF MARICOPA COUNTY, Arizona, by Henry H. Haws, George L. Campbell and Hawley Atkinson, a majority thereof, Appellant,

v.

Rhea WOODALL, Clerk of the Board of Supervisors, Charles F. Hyder, Maricopa County Attorney and Maricopa County ex rel. Charles F. Hyder, Appellees.

No. 13828–PR.

Supreme Court of Arizona,
In Banc.

Oct. 23, 1978.

Lewis & Roca by John P. Frank, Richard W. Bowers, Phoenix, for appellant.

Treon, Warnicke, Dann & Roush by Charles D. Roush, Carol A. Roush, Phoenix, for appellee Woodall.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellee Hyder.

Stephen D. Neely, Pima County Atty. by Howard L. Baldwin, Tucson, amicus curiae.

STRUCKMEYER, Vice Chief Justice.

This special action was brought by three members of the Maricopa County Board of Supervisors seeking to establish through a declaratory judgment that the Board had the right to hire private counsel to prosecute and defend the county in lawsuits and to furnish advice to it and other county officers. The Superior Court entered judgment in favor of Charles F. Hyder, County Attorney, intervenor in the action. The Court of Appeals reversed, 120 Ariz. 391, 586 P.2d 640 (App.1978). We accepted jurisdiction to review. Opinion of the Court of Appeals vacated. Judgment of the Superior Court affirmed in part and reversed in part.

The events which led to the filing of this action arose out of conflicting opinions of the Maricopa County Attorney and the Attorney General. The former advised the Clerk of the Board of Supervisors, Rhea Woodall, that the hiring of private counsel by the Board of Supervisors was illegal, and the latter advised her that it was not. Woodall refused to sign warrants issued by the Board of Supervisors to pay five lawyers who were working for the Board principally in an advisory capacity. Charles F. Hyder, County Attorney of Maricopa County, intervened, asserting that it was the County Attorney's duty to provide legal advice to the Board and county officers and that the hiring of lawyers by the Board was

an attempt to usurp his statutory powers and duties. It is undisputed that the present County Attorney has never refused to make the services of his office available to the Board although in the past some county attorneys may have.

The judgment of the Superior Court sustained the position of the County Attorney as to advisory lawyers and ordered that the Board refrain from hiring:

" * * * outside legal counsel for purposes of litigation unless and until the Maricopa County Attorney refuses to provide such services, consents to the employment of outside counsel, or determines that he is unable to provide those services either by his office or by appointment of a special deputy county attorney by the County Attorney, or determines that he is unable to provide the services because of a conflict of interest or in direct litigation by the Board against the County Attorney."

There are two questions which can be quickly disposed of before reaching the merits of the litigation. The first, an issue raised by the Board, is whether there is a justiciable controversy between it and Rhea Woodall.

The requirements for a justiciable controversy under Arizona's declaratory judgment statutes, A.R.S. § 12–1831 et seq., are that there be an actual controversy ripe for adjudication and that there be parties with a real interest in the questions to be resolved. *Arizona State Board of Directors v. Phoenix Union High School District,* 102 Ariz. 69, 424 P.2d 819 (1967); *Moore v. Bolin,* 70 Ariz. 354, 220 P.2d 850 (1950); *Planned Parenthood Center of Tucson, Inc. v. Marks,* 17 Ariz.App. 308, 497 P.2d 534 (1972). The Clerk of the Board of Supervisors is an officer separate and distinct from the Board, A.R.S. § 11–401(A)(8), although appointed by the Board, A.R.S. § 11–241. Her signature must be on every county warrant, A.R.S. § 11–631(A). On the advice of the County Attorney, whose duty it is to "oppose claims against the county which he deems unjust or illegal," A.R.S.

§ 11–532(A)(9), Woodall refused to sign warrants for payment of the five "in-house lawyers" hired by the Board.

■ We are satisfied that both the Supervisors and Woodall had a real interest in the controversy, that the controversy was ripe for adjudication and that a declaratory judgment was an appropriate vehicle to determine the controversy. Accordingly, we hold that the controversy between Woodall and the majority members of the Board of Supervisors was not "a mere difference of opinion between public officers." Cf. *Riley v. County of Cochise,* 10 Ariz.App. 55, 60, 455 P.2d 1005, 1010 (1969).

The Board next questions the right of the County Attorney to intervene in the litigation.

Rule 24(a), Rules of Civil Procedure, 16 A.R.S., reads:

"*Intervention of right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action *and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.*" (Emphasis added.)

■ By A.R.S. § 11–532(A)(7), the County Attorney must "[w]hen required, give his written opinion to county officers on matters relating to the duties of their offices" and by A.R.S. § 11–532(A)(9), "[a]ct as the legal advisor to the board of supervisors, * * * and oppose claims against the county which he deems unjust or illegal." It seems clear that the County Attorney will be impeded in the discharge of his statutory duties if other lawyers are hired by the Supervisors to provide the advice which by law he is required to supply to the Board. Moreover, since it is his duty to oppose claims which he deems unjust or illegal and he believes the employment by the Board of "in-house lawyers" is illegal, it is his bounden duty to oppose the issuance of warrants for payment of their claims for compensation.

The foregoing brings us to a consideration of the merits of the case. In this respect, the first question to which we address ourselves is whether the Board has the power to hire "in-house" counsel independent of the County Attorney for the purpose of advising it and the various county officers relative to legal matters. Our conclusion is that it may not.

■ Generally, where a statute authorizes legal counsel charged with the duty of conducting the legal business of a governmental agency, contracts with other attorneys for legal services are void. So it has been said of municipalities that:

"[W]here the [municipal] corporation has regular counsel, charged with the duty of conducting all the law business in which the corporation is interested, contracts for additional or extra legal services are unauthorized." 10 E. McQuillan, Municipal Corporations, § 29.12 (3d ed.).

In Illinois it has been held where the prosecution of actions to collect taxes was within the scope of the duties of the state's attorney and the Board of Commissioners of Cook County employed attorneys to collect delinquent taxes that the contracts of employment were ultra vires and void. The Illinois Supreme Court said:

"The law is well settled that when the constitution or the laws of the State create an office, prescribe the duties of its incumbent and fix his compensation, no other person or board, except by action of the legislature, has the authority to contract with private individuals to expend public funds for the purpose of performing the duties which were imposed upon such officer. *Fergus v. Russel,* 270 Ill. 304, 110 N.E. 130, Ann.Cas.1916B, 1120; *Stevens v. Henry County,* 218 Ill. 468, 75 N.E. 1024, 4 L.R.A.,N.S., 339, 4 Ann.Cas. 136; *Hope v. City of Alton,* 214 Ill. 102, 73 N.E. 406. The contracts of employment under which appellants claim were ultra vires and void." *Ashton v. Cook County,* 384 Ill. 287, 300, 51 N.E.2d 161, 167 (1943), *cert. denied, sub nom. Winston v. Courtney,* 322 U.S. 731, 64 S.Ct. 944, 88 L.Ed. 1566 (1944).

Similarly, in *State ex rel. Board of County Commissioners of Harmon County v. Oklahoma Tax Commissioner,* 194 Okl. 359, 151 P.2d 797 (1944), it was held that an attorney demanding payment of a claim against a county must show some statute authorizing it or that the claim arises from some contract express or implied which finds authority in law.

 From the foregoing and from an examination of Arizona's statutes, we think it is clear that the Board has no authority to employ private counsel to advise the Board and other county officers or employees. The Constitution of Arizona created the Office of County Attorney and the statute prescribes the duties attached thereto. Public funds may not be expended for the purpose of performing the duties which are imposed upon the County Attorney, and the contracts of employment by which the "in-house lawyers" were engaged to perform duties with which the County Attorney is charged are ultra vires and void. Of course if a county attorney refuses to act or is incapable of acting or is unavailable for some other reason, a county board may hire outside counsel to assist it. *Cahn v. Town of Huntington,* 29 N.Y.2d 451, 328 N.Y.S.2d 672, 278 N.E.2d 908 (1972). *See also Merriam v. Barnum,* 116 Cal. 619, 48 P. 727 (1897).

The further question arising in this case relates to the power of the Board to engage counsel independent of the County Attorney for the purpose of prosecuting and defending legal actions brought on behalf of or against the county. In Arizona there are a number of cases which touch upon this question.

In *County of Santa Cruz v. Barnes,* 9 Ariz. 42, 76 P. 621 (1904), the supervisors of Santa Cruz County hired a law firm to conduct certain civil litigation on behalf of the county. In a suit to collect fees for its services, it was held that the supervisors of a county have the power, when necessary or advisable, to employ counsel in addition to the county attorney (then called "district attorney") to protect the county's legal interests. It was pointed out that subdivision

12 of ¶ 216 of Compiled Laws of 1877 (present paragraph 14 of A.R.S. § 11–251) relating to the powers of the board of supervisors was derived from California. That paragraph read substantially then as it does now, that the board may "[d]irect and control the prosecution and defense of all actions to which the county is a party, and compromise them." It was further pointed out that at the time of adoption in Arizona it had been construed in California to empower the board to employ other counsel in suits in which the county had or was supposed to have had an interest. The court quoted with approval from *Hornblower v. Duden,* 35 Cal. 664, that:

" * * * the board should not put the county to the expense of extra counsel unless extra counsel is needed. * * * [B]ut, in any event, it is a matter in which their judgment and discretion is not open to review by the courts." 9 Ariz. at 48, 76 P. at 623.

Thirty years later, in *Pima County v. Grossetta,* 54 Ariz. 530, 97 P.2d 538 (1939), the court again addressed itself to the question of whether the board of supervisors had the power to employ private counsel to handle civil litigation in which the county was interested or a party. Again it was held that the board had such power. Citing the then applicable statutes, predecessors of today's A.R.S. § 11–532(A)(4), (7)–(9), the Court said:

"It will be observed that *there is no express provision requiring the county attorney to prosecute any civil actions* on behalf of the county, though there is one requiring him to defend any which may be brought against it, nor is even this latter power said to be exclusive." (Emphasis added.)

The Court further said:

"It will be seen by this subdivision [predecessor of A.R.S. § 11–251(14)] that the board of supervisors is given the final authority to direct and control all actions in which the county is a party, either as plaintiff or defendant. It may frequently occur that the county attorney has one idea as to the advisability of bringing an

action for the county, or as to how it should be handled, while the supervisors have a different one, so that there would be a lack of harmony between them. Under such circumstances it would seem that the public interest would require that the men who had the final authority in all matters in regard to the action should be allowed to choose the counsel who actually handled its legal phases. Since there is no specific prohibition against it in the statutes, we think subd. 14, *supra,* gives implied authority to the board of supervisors in its discretion to employ counsel in the handling of all matters to which the county is a party." 54 Ariz. at 539, 540, 97 P.2d at 542.

■ The judgment of the lower court is affirmed insofar as it concerns the practice of hiring attorneys as legal advisors by the Maricopa County Board of Supervisors, but is reversed insofar as it forbids the Board of Supervisors from hiring all outside legal counsel for the purpose of litigation. In other respects, the judgment of the Superior Court of Maricopa County is affirmed.

HAYS, HOLOHAN and GORDON, JJ., concur.

CAMERON, Chief Justice, dissenting.

I regret that I must dissent. I believe the statement by Chief Judge Froeb in the opinion of the Court of Appeals succinctly states my position. *Board of Supervisors v. Woodall,* 120 Ariz. 391, 586 P.2d 640 (App.1978):

"There is a difference, however, between duty and exclusive power.

"We are unable to accept the argument that duty to render legal advice is an exclusive power reposed in the office of the county attorney. There is no statute so stating as there is with regard to the Arizona attorney general in A.R.S. § 41–192. [footnote omitted] It is logical that the legislature would provide that the county attorney have the duty to render legal advice to other county officers when, as and if there is a necessity for it. It is not logical to imply that the duty is an exclusive power. The argument that

employment of attorneys outside of the county attorney's office gives rise to unnecessary duplication of services and is, therefore, against the public interest, does not hold true. If a given level of legal service is required by the board and its departments, arguably, the lawyer hours involved are the same whether the attorney is on the staff of the county attorney or on the staff of the board. In fact, it can be argued that the latter is more efficient, particularly where the staff attorney has administrative responsibilities to which the legal advice is related.

"It is suggested that, where legal services are the exclusive province of the county attorney, a 'check' upon the power of the board occurs which is in keeping with the constitutional concept of separation of powers. It is argued that checks and balances are necessary to restrain the power that is naturally reposed in the board as the combined legislative and executive branch of county government. We are directed to no case which holds that the office of the county attorney takes on the characteristic of a branch of government whose constitutional purpose is to check the other branches. We are satisfied to believe that the office, as with other county offices under the constitution, is assigned express powers and duties which are separately exercised. Moreover, in the area of legal advice, it would be anomalous indeed if the lawyer served his client in the role of adversary rather than advocate. We are not convinced that the people of Arizona acting through their legislative representatives chose to invest the county attorney with a watchdog role over the board of supervisors." 120 Ariz. at 396, 586 P.2d at 645.