IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**GREG MILLS, ET AL.,**
*Plaintiffs/Appellants,*


*v.*


**ARIZONA BOARD OF TECHNICAL REGISTRATION, ET AL.,**
*Defendants/Appellees.*

---

No. CV-21-0203-PR
**Filed August 10, 2022**

---

Appeal from the Superior Court in Maricopa County
The Honorable Joseph P. Mikitish, Judge
No. CV2019-013509
**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

---

Memorandum Decision of the Court of Appeals,
Division One
1 CA-CV 20-0510
Filed August 12, 2021
**REVERSED**

---

COUNSEL:

Paul V. Avelar (argued), Institute for Justice, Tempe; Daniel Rankin, Institute for Justice, Arlington, VA, Attorneys for Greg Mills, et al.

John C. Gray (argued), Gregory Y. Harris, Lewis Roca Rothgerber Christie LLP, Phoenix, Attorneys for Arizona Board of Technical Registration, et al.

Brett W. Johnson, Tracy A. Olson, Ian R. Joyce, Snell & Wilmer LLP, Phoenix; Ronald M. Jacobs, Jay C. Johnson, Venable LLP, Washington, D.C., Attorneys for Amici Curiae National Council of Architectural Registration Boards, National Council of Examiners for Engineering and Surveying, and

Council of Landscape Architectural Registration Boards

Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

Aditya Dynar, Pacific Legal Foundation, Arlington, VA, Attorneys for Amicus Curiae Pacific Legal Foundation

———————

VICE CHIEF JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY, and KING joined.

¶1        Greg Mills is an engineer who designs, analyzes, tests, and builds electronic circuits for consumer products through his consulting firm, Southwest Engineering Concepts, LLC ("SEC"). The Arizona Board of Technical Registration regulates several technical professions, including engineers. *See* A.R.S. §§ 32-101 to -113. Persons engaging in an "engineering practice" must comply with the Board's qualifications and standards, including registration. *See* A.R.S. §§ 32-101(B)(11), 32-121. Mills and the Board dispute whether his work requires registration with the Board, but the Board has not initiated formal proceedings to resolve the matter.

¶2        The issue here is whether the doctrines of exhaustion of administrative remedies, ripeness, and standing bar Mills' suit filed in the superior court pursuant to the Uniform Declaratory Judgments Act ("UDJA"), A.R.S. § § 12-1831 to -1846, to challenge the constitutionality of statutes prohibiting persons and firms from engaging in "engineering practices" unless registered with the Board. We hold that, for the most part, these doctrines do not prohibit Mills from proceeding with his lawsuit.

## BACKGROUND

¶3        Mills worked as an engineer for manufacturing companies for decades before starting SEC and eventually coming to the Board's attention. In May 2019, the Board commenced an investigation after receiving a customer complaint about Mills' fees and his non-registration status. Based on two Board-registered engineers' opinions, it determined Mills and SEC

had violated the law by engaging in "engineering practices" and by advertising their services as "engineers" without first registering with the Board. *See* A.R.S. §§ 32-141 (firm), 32-145 (individual). A violation of either statute is a class two misdemeanor that subjects the offender to fines and incarceration. A.R.S. §§ 32-145(6), 13-707(A)(2), 13-802(B).

**¶4** To resolve the complaint informally, a Board investigator sent Mills a proposed consent agreement and order in August asking him to agree he had violated the law. *See* Ariz. Admin. Code R4-30-120(G). If signed, the consent agreement would have imposed a $3,000 fine, assessed investigation costs, and required Mills to stop working until he and SEC properly registered with the Board. Mills disputed that either he or SEC was required to register with the Board and therefore refused to sign the consent agreement.

**¶5** In October, Mills declined a Board invitation to meet and discuss the investigation. The Board met anyway and voted to offer Mills a second consent agreement and order identical to the first, except it doubled the fine to $6,000. As before, Mills refused to sign.

**¶6** The legislature has delegated authority to the Board to conduct evidentiary hearings itself or through an administrative law judge and resolve complaints or charges within its jurisdiction. *See* A.R.S. § 32-106(A)(5)–(6); *see also* § 32-106.02(A) ("The [B]oard may initiate a hearing pursuant to title 41, chapter 6, article 10 on receipt of a complaint that a person who . . . is not registered . . . is practicing . . . any board regulated profession or occupation."). An aggrieved party may appeal an adverse Board decision to the superior court after exhausting all administrative remedies. *See* A.R.S. §§ 32-128(J), 41-1092.08(H). The scope of that review is governed by A.R.S. § 12-910, which the legislature amended last year to require de novo review of final decisions by agencies regulating professions if demanded. *See* § 12-910(D); *see also* 2021 Ariz. Legis. Serv. Ch. 281 (S.B. 1063). The Board has not initiated formal proceedings against Mills for the alleged statutory violations, and nothing authorizes Mills to affirmatively seek a determination from the Board that no violations have occurred. Consequently, whether Mills is required to register with the Board and has broken the law remains unresolved.

**¶7** In December, Mills and SEC (collectively, "Mills") filed this lawsuit in superior court against the Board, its members, and its executive director (collectively, the "Board"), seeking declaratory and injunctive relief. Mills alleges four causes of action:

3

(1) Section 32-145, subsections (1) and (2), both facially and as applied here, violate the Arizona Constitution, article two, section six, by preventing him from speaking freely about his business as an engineer unless he registers as an engineer;

(2) Section 32-101(B)(11), which defines the "engineering practice" subject to registration, is void for vagueness and violates the Arizona Constitution's due process and separation of powers provisions, *see* Ariz. Const. art. 2, § 4; art. 3; art. 4, pt. 1, § 1;

(3) Sections 32-141(1) and 32-145(1), as applied here, violate the Arizona Constitution, article two, sections four and thirteen, and article four, part two, section 19(13), by prohibiting unregistered engineering practices and therefore arbitrarily prohibiting Mills from earning a living; and

(4) Sections 12-910(E) (2018) and 32-106(A)(5), as applied here, usurp judicial powers by authorizing the Board to adjudicate facts in violation of the Arizona Constitution, article two, section four and articles three and six.

**¶8** On the Board's motion, the superior court dismissed the complaint on two bases: (1) the court lacks subject matter jurisdiction because Mills failed to exhaust administrative remedies with the Board, *see* Ariz. R. Civ. P. 12(b)(1); and (2) the complaint fails to state a claim upon which relief can be granted because the claims are unripe and Mills lacks standing to bring them, *see* Ariz. R. Civ. P. 12(b)(6). The court of appeals affirmed. *Mills v. Ariz. Bd. of Tech. Registration*, No. 1 CA-CV 20-0510, 2021 WL 3557298, at *1 (Ariz. App. Aug. 12, 2021) (mem. decision).

**¶9** We granted review of Mills' petition because it presents an issue of statewide importance.

### DISCUSSION

### I. Standard of review

**¶10** We review the grant of a motion to dismiss de novo. *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 513 ¶ 11 (2021). Likewise, we review issues of jurisdiction, ripeness, and standing de novo as issues of law. *See Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 279 ¶ 34 (2019) (standing and ripeness); *Medina v. Ariz. Dep't of Transp.*, 185 Ariz. 414, 417 (App. 1995) (jurisdiction).

4

## II. Exhaustion of administrative remedies

### A. General principles

¶11　　　　A litigant must exhaust a statutorily prescribed administrative remedy before seeking judicial relief from actual or threatened injuries. *See Moulton v. Napolitano*, 205 Ariz. 506, 511 ¶ 9 (App. 2003). The purpose of the exhaustion doctrine is to afford an administrative agency the opportunity to "perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Id*. (quoting *Medina*, 185 Ariz. at 417). As a result, "[t]he doctrine promotes both judicial economy and administrative agency autonomy by preventing premature judicial intervention in inchoate administrative proceedings." *Id*. (quoting *Medina*, 185 Ariz. at 417); *see also Univar Corp. v. City of Phoenix*, 122 Ariz. 220, 223 (1979) (stating the "doctrine is firmly entrenched in Arizona for such sound reasons as judicial economy and reliance on the expertise of the administrative body for initial adjudication" (internal citation omitted)).

¶12　　　　A complainant's failure to exhaust administrative remedies does not deprive the superior court of subject matter jurisdiction. *Moulton*, 205 Ariz. at 511 ¶ 9 n.2; *Medina*, 185 Ariz. at 418. But when the doctrine is properly raised as an affirmative defense, the court will refuse to adjudicate the case for the complainant's failure to satisfy a procedural prerequisite. *Medina*, 185 Ariz. at 416, 418; *cf. Taliaferro v. Taliaferro*, 186 Ariz. 221, 223 (1996) (distinguishing between a court's authority to proceed and its subject matter jurisdiction).

### B. Application here

¶13　　　　The Board argues Mills must exhaust administrative remedies by awaiting the initiation and completion of formal proceedings that would result in either a favorable outcome for Mills or an appealable adverse decision. It asserts that if Mills is permitted to adjudicate his claims outside an appeal of the Board's final decision, it would render superfluous the statutes authorizing the court to review final agency decisions. *See* §§ 12-905(A), 32-106.02(D), 41-1092(6). Relatedly, the Board asserts that permitting Mills to maintain his lawsuit would violate the legislature's constitutional authority to direct the way lawsuits may be brought against the state. *See* Ariz. Const. art. 4, pt. 2, § 18. We disagree.

¶14　　　　Most significantly, a litigant is required to exhaust administrative remedies only if he has access to a statutorily prescribed

administrative remedy. *See Moulton*, 205 Ariz. at 511 ¶ 9 ("[I]f parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures." (quoting *Hamilton v. State*, 186 Ariz. 590, 593 (App. 1996))). That precondition is lacking here.

¶15 Although Mills could raise his constitutional challenges in an appeal from the Board's final administrative decision, *see id.* at 513 ¶ 20; § 12-910(F), it is uncertain whether the Board will make that decision because it has not initiated formal proceedings against Mills and is not statutorily required to do so. The court of appeals suggested Mills could "request formal review of the customer complaint by the Board." *Mills*, 2021 WL 3557298, at *2 ¶ 8. But as the Board confirmed at oral argument, neither the statutes nor the Board's regulations provide a mechanism for Mills to request or require review of the customer complaint or the Board's investigative results. *See* § 32-106.02 (empowering only the Board to initiate formal proceedings that culminate in a final appealable decision).

¶16 If Mills could compel the Board to formally resolve whether he must register as an engineer, he could then raise his constitutional claims in an appeal of any adverse decision. Then, we might agree with the Board and the previous courts that Mills must exhaust those remedies before initiating this lawsuit. *See Mills*, 2021 WL 3557298, at *7 ¶ 30. The lack of an available administrative path for bringing Mills' claims before the superior court, however, persuades us that the legislature did not intend an appeal of a final, adverse Board decision as the exclusive remedy available to Mills, as the Board suggests. If that were so, after asserting Mills' statutory violations and assessing escalating fines in proposed consent agreements, the Board could delay initiating formal proceedings for years or never initiate proceedings that would culminate in an appealable decision, leaving Mills in legal limbo, unable to know with certainty whether he is lawfully required to register as an engineer under §§ 32-141 and -145, as the Board claims. (Indeed, after Mills filed this lawsuit the Board voted to hold a formal hearing but then rescinded that vote after the superior court dismissed the complaint.) That consequence would contradict the UDJA, which authorizes persons affected by a statute to "have determined any question of construction or validity" of that statute and "obtain a declaration of rights, status or other legal relations thereunder." A.R.S. § 12-1832; *see also* § 12-1831 (empowering courts to provide declaratory relief). Nothing in the statutes governing the Board suggests the legislature intended to deny people in Mills' situation the ability to resolve constitutional claims through a declaratory judgment action if the Board fails to enter a final, appealable decision.

¶17 Contrary to the statutes governing the Board, statutes governing other professional boards either require formal proceedings if informal efforts to resolve issues are unsuccessful or permit the professional to initiate such proceedings. *See, e.g.*, A.R.S. §§ 32-573(C)–(D) (Barbering and Cosmetology Board), 32-2934(H) (Board of Homeopathic/Integrated Medicine Examiners), 32-3442(E)–(F) (Board of Occupational Therapy), 32-1744(D) (Board of Optometry), 32-1927.02(H) (Board of Pharmacy), 32-3052(G)–(H) (Board of Private Postsecondary Education). And unlike Mills, professionals who resist informal resolution of disputes with these boards can receive a final hearing and therefore a final, appealable decision. *See, e.g.*, A.R.S. § 32-2937 (allowing judicial review of final decisions by Board of Homeopathic/Integrated Medicine Examiners). Requiring the professional to exhaust administrative remedies in these situations is warranted because there is a prescribed remedy that, if pursued, would enable the professional to raise any constitutional claims in a subsequent appeal to the superior court. *See Valley Vendors Corp. v. City of Phoenix*, 126 Ariz. 491, 494 (App. 1980) (requiring exhaustion when taxpayer could file a petition for a hearing with the city auditor to reduce or eliminate a tax assessment); *Campbell v. Chatwin*, 102 Ariz. 251, 258 (1967) (requiring exhaustion when statutes provided mechanism whereby an individual whose driver license or vehicle registration was administratively suspended could request an administrative hearing). But absent this lawsuit, Mills is not assured of resolving his claims because he cannot compel the Board to issue a final, appealable decision, and indeed that decision may never be issued.

¶18 We are further persuaded that the exhaustion doctrine does not preclude Mills' lawsuit because the court, not the Board, possesses authority to grant Mills the remedies he seeks: a declaration that the statutes at issue are unconstitutional either facially or as applied and an injunction against their enforcement. *See Ariz. Indep. Redistricting Comm'n v. Brewer*, 229 Ariz. 347, 355 ¶ 34 (2012) ("[W]hen one with standing challenges a duly enacted law on constitutional grounds, the judiciary is the department to resolve the issue . . . ."); *Moulton*, 205 Ariz. at 513 ¶ 20 ("We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation." (quoting *Est. of Bohn v. Waddell*, 174 Ariz. 239, 249 (App. 1992))); *see also Manning v. Reilly*, 2 Ariz. App. 310, 312 (1965) ("Legal or constitutional questions concerning the validity of a zoning ordinance require judicial determination and are beyond the scope of an administrative body's powers and authority."). Requiring Mills to await a (possible) final Board decision before raising his constitutional challenges on appeal would be pointless because the Board

is powerless to resolve those challenges. *See Moulton*, 205 Ariz. at 513 ¶ 18 ("[A] litigant should not be required to exhaust administrative remedies when such an effort would be futile."); *see also S. Pac. Co. v. Cochise County*, 92 Ariz. 395, 399–400 (1963) (finding a taxpayer had no obligation to use a prescribed administrative remedy that could not correct the systemic undervaluation practices complained about); *McCluskey v. Sparks*, 80 Ariz. 15, 19 (1955) (concluding the superior court erred by dismissing a suit challenging constitutionally discriminatory valuation of real property for taxing purposes because a tax protest before the county board of equalization and subsequent appeal would not encompass this issue, making the administrative remedy "no remedy at all").

¶19 To clarify, the fact that the superior court has original jurisdiction to adjudicate constitutional challenges to statutes does not necessarily relieve litigants of their obligation to exhaust administrative remedies when administrative issues also raise constitutional concerns. *See* Ariz. Const. art. 6, § 14 (establishing superior court's original jurisdiction over cases). This grant of jurisdiction does not prevent the legislature from conditioning the court's exercise of jurisdiction on a litigant's exhaustion of administrative remedies. *See Est. of Bohn*, 174 Ariz. at 246. An agency may apply constitutional doctrines when resolving claims. *See Moulton*, 205 Ariz. at 513 ¶ 20. And if constitutional issues exist that can only be adjudicated by a court but are "'inextricably intertwined' with government benefits for which administrative remedies exist," courts generally require exhaustion of those remedies before addressing those issues. *See id.* at 512 ¶ 16; *see also Est. of Bohn*, 174 Ariz. at 250 (noting that exhaustion could moot the issue if the agency decides in the complainant's favor and, if not, permits the agency to "develop the factual record so that the court will not have to decide 'important and difficult' questions of constitutional law in the absence of a factual background" (quoting *W. E. B. DuBois Clubs of Am. v. Clark*, 389 U.S. 309, 312 (1967))); *St. Mary's Hosp. & Health Ctr. v. State*, 150 Ariz. 8, 10–11 (App. 1986) (requiring exhaustion where "violations of state and federal statutes and regulations, [and] constitutional provisions" were "inextricably intertwined with the claims for nonpayment for medical and hospital services provided").

¶20 But the legislature has not conditioned the superior court's authority to adjudicate constitutional challenges to the statutes here on a complainant's exhaustion of administrative remedies. *See Est. of Bohn*, 174 Ariz. at 245–46. As previously described, a complainant like Mills has no statutorily prescribed administrative remedy to pursue. Also, by adopting the UDJA, the legislature empowered the courts to "declare rights, status, and other legal relations," § 12-1831, including deciding

whether statutes are unconstitutional, *see Pena v. Fullinwider*, 124 Ariz. 42, 44 (1979) (involving declaratory judgment suit to challenge constitutionality of legislation).

**¶21**     This Court's opinion in *State Board of Technical Registration v. McDaniel*, 84 Ariz. 223 (1958), supports our conclusion that appeal of a Board's final decision is not an exclusive remedy. There, the Board initiated disciplinary proceedings against McDaniel, a registered structural engineer, for three charged statutory violations. *Id*. at 226. The week before a scheduled hearing, McDaniel obtained an extraordinary writ of prohibition (what we today call "special action relief," *see* Ariz. R.P. Spec. Act., Refs. & Annos., editors' notes) enjoining the Board from pursuing those charges because the Board lacked jurisdiction over two charges and the statutory basis for the third charge was unconstitutional. *McDaniel*, 84 Ariz. at 227. On appeal, although not directly addressing the exhaustion doctrine, this Court rejected the Board's argument that McDaniel was not entitled to the writ because he had a "plain, speedy and adequate remedy by appeal" of the Board's decision. *Id*. at 227–28. The Court reasoned that appealing a final Board decision "is [not], *in all cases*, the *exclusive* and . . . *adequate remedy* for a registrant" wishing "to attack the jurisdiction and action of the Board," although that procedure should typically be followed. *Id*. The Court concluded that the superior court did not abuse its discretion in accepting jurisdiction to issue the writ due to several factors, including the fact that questions existed about the constitutionality of the statutory provisions and the Board's jurisdiction. *See id*. at 228.

**¶22**     In sum, because Mills does not have a prescribed administrative remedy to pursue by which to raise his constitutional claims, his lawsuit is not precluded by the exhaustion of remedies doctrine, and the superior court erred by dismissing his complaint on this basis.

### III. Standing and ripeness

### A. General principles

**¶23**     Unlike the federal constitution, "the Arizona Constitution does not have a case or controversy requirement." *See Brush & Nib*, 247 Ariz. at 279 ¶ 35. Nevertheless, we apply the doctrines of standing and ripeness as a matter of judicial restraint to ensure courts "refrain from issuing advisory opinions, that cases be ripe for decision and not moot, and that issues be fully developed between true adversaries." *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 209 ¶ 8 (2019) (quoting *Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 16 (2005)).

¶24 Standing and ripeness are both prudential doctrines. *See Brush & Nib*, 247 Ariz. at 280 ¶ 36; *Bennett v. Napolitano*, 206 Ariz. 520, 524 ¶ 16, 527 ¶ 31 (2003). A plaintiff has standing to bring an action if it alleges a "distinct and palpable injury"; a generalized harm shared by all or by a large class of people is generally insufficient. *Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998). Ripeness reflects the judiciary's reluctance to adjudicate hypothetical or abstract questions. *Ariz. Downs v. Turf Paradise, Inc.*, 140 Ariz. 438, 444 (App. 1984). As a general matter, a case is ripe if the plaintiff has incurred an injury or there is an actual controversy between the parties. *Brush & Nib*, 247 Ariz. at 280 ¶ 36.

¶25 Although the UDJA is remedial and therefore liberally construed, the standing and ripeness doctrines apply to complaints initiated under the act. *See id.* at 279–81 ¶¶ 33–41; *Citizens' Comm. for Recall of Jack Williams v. Marston*, 109 Ariz. 188, 192 (1973); *see also Bd. of Supervisors of Maricopa Cnty. v. Woodall*, 120 Ariz. 379, 380 (1978) (stating that a declaratory judgment action must involve a "justiciable controversy," which arises when there is "an actual controversy ripe for adjudication" and the parties have "a real interest in the questions to be resolved"). Facts pleaded in a complaint must therefore "show a present existing controversy which permits the court to adjudicate any present rights," and not merely allege "an intent to do certain things in the future all of which are dependent upon future events and contingencies within control of the [plaintiff]." *Moore v. Bolin*, 70 Ariz. 354, 358 (1950).

## B. Application

¶26 The Board argues Mills lacks standing to bring this lawsuit and his claims are unripe because a factual dispute exists whether Mills is required to register as an engineer and unless and until the Board formally resolves that dispute, any injury to Mills is speculative and thus nonjusticiable under the UDJA. *See Brush & Nib*, 247 Ariz. at 280 ¶ 39 (rejecting wedding invitation designers' challenge to constitutionality of city ordinance precluding discrimination on the basis of sexual orientation as applied to some of plaintiffs' products as that challenge "implicate[d] a multitude of possible factual scenarios too 'imaginary' or 'speculative' to be ripe" (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000))). With one exception described later, we disagree.

¶27 First, factfinding by the Board is not required for the court to resolve Mills' claims. Contrary to the court of appeals' assertion, *see Mills*, 2021 WL 3557298, at *4 ¶ 18, *6 ¶ 28, Mills challenges the facial constitutionality of § 32-145(1)-(2). No factfinding is required to resolve

10

that issue, and whether Mills is actually required to register as an engineer does not impact that resolution. *See Hernandez v. Lynch*, 216 Ariz. 469, 471 ¶ 7 (App. 2007) (stating that whether a proposition is facially unconstitutional is not dependent on the facts of a specific case).

**¶28** Resolution of Mills' remaining as-applied and void for vagueness challenges depends in part on whether he engages in an "engineering practice" under § 32-101(B)(11) and has therefore violated §§ 32-141 and 32-145. *See Brush & Nib*, 247 Ariz. at 295 ¶ 111 (resolving an as-applied challenge to an ordinance based on the facts unique to the case); *State v. Tocco*, 156 Ariz. 116, 119 (1988) (stating that ordinarily a person whose conduct clearly falls within the valid portion of a statute may not challenge the statute for vagueness). But the superior court can resolve factual disputes as necessary to declare Mills' rights and obligations under the law. *See Brush & Nib*, 247 Ariz. at 278 ¶ 24 (noting an evidentiary hearing conducted in declaratory judgment action).

**¶29** Second, Mills is not required to suffer an actual injury before his claims become justiciable. The key inquiry in the absence of actual injury is whether an actual controversy exists between the parties. *See id.* at 280 ¶¶ 36-39 (concluding that wedding invitation designers' claims were ripe regarding custom invitations as designers faced a real threat of prosecution for refusing to create such invitations for a same–sex wedding); *Planned Parenthood Comm. of Phx., Inc. v. Maricopa County*, 92 Ariz. 231, 233 n.1 (1962) (stating an "actual controversy" existed that justified a non-profit clinic's declaratory judgment action challenging a penal statute prohibiting publication of birth control methods because "the threat of prosecution by governmental officials ha[d] curtailed" the clinic's activities). We conclude that an actual controversy exists regarding Mills' first through third causes of action, but not for the fourth cause of action.

**¶30** The initial three causes of action relate to an existing threat to Mills' right to speak freely about his business, his right to be clearly advised about what type of engineer must be registered, and his right to earn a living. The Board has investigated and determined that Mills is violating §§ 32-141 and -145 by not registering as an engineer. It has offered to informally resolve the dispute only if Mills admits the violation, pays a substantial fine, and stops working as an engineer unless he registers with the Board. Violating §§ 32-141 and -145 is a class two misdemeanor, which can result in incarceration and fines. *See* §§ 13-707(A)(2), 13-802(B), 32-145(6). Just as the wedding invitation designers in *Brush & Nib* and the non-profit clinic in *Planned Parenthood* were not required to await prosecution before bringing their declaratory judgment complaints, Mills is

11

not required to do so here. The controversy with the Board is an actual one based on presently existing facts, despite the Board's failure to proceed with formal proceedings. *See Moore*, 70 Ariz. at 358. Mills has a real and present need to know whether the pertinent statutes are constitutional and can therefore prevent him from continuing to work as an engineer without registering with the Board. *See* § 12-1832 (permitting declaratory relief for persons whose rights are "affected by a statute"). These claims are justiciable.

**¶31** We reach a contrary decision concerning the fourth cause of action. There, Mills seeks a declaration that, as applied to the determination and adjudication of private rights, §§ 12-910(E) (2018) and 32-106(A)(5) combine to establish an unconstitutional delegation of judicial power to an administrative board. But because the Board has not initiated formal proceedings, Mills is not affected by the Board's adjudicative processes, and an actual controversy does not exist regarding this claim. That claim is speculative and should be left to be developed by true adversaries. *See City of Surprise*, 246 Ariz. at 209 ¶ 8.

**¶32** In sum, causes of action one through three in Mills' complaint are justiciable, and the superior court erred by dismissing them as nonjusticiable. The fourth cause of action is unripe, and the court therefore correctly dismissed it.

### IV. Issues not before us

**¶33** The Board alternatively argues we should affirm the superior court's dismissal of the complaint on two independent bases. First, it asserts Mills is precluded from maintaining his lawsuit because he failed to lodge a notice of claim, as required by A.R.S. § 12-821.01(A). Second, it asserts the Board is a non-jural entity that cannot be sued outside an appeal from a final Board decision. We did not accept review of these issues, and we therefore decline to address them.

### CONCLUSION

**¶34** For the foregoing reasons, we reverse the court of appeals' memorandum decision. We affirm the superior court's judgment in part, reverse in part, and remand for further proceedings.

12